IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID ADRIAN SMITH, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:22-CV-1580-B-BK |
| § | |
| WWE INC., ET AL., § | |
|     DEFENDANTS. § | |

**ANSWERS TO MAGISTRATE JUDGE'S QUESTIONNAIRE**

You allege Defendants committed theft of trade secrets.

**1. Briefly** summarize the facts supporting your claims.

    Facts presented in Plaintiff's original petition apply across all charges: Misappropriation of Trade Secrets; Theft of Trade Secrets; and RICO. Plaintiff repeatedly uses appropriate terminology in the facts, paragraphs 26 through 36. These terms are as follow:

    Misappropriation of Trade Secrets, civil terminology: Disclosed (B); used / operated (B); and acquired (A) [18 USC 1839(5)]. Theft of Trade Secrets, criminal terminology: Conveyed (2); and received (3) [18 USC 1832(a)].

    Plaintiff may not use these terms exhaustively in every case in the facts in the original petition, but a review of these paragraphs reveals very extensive use, enough to satisfy the court's inquiry. In brief, where Plaintiff alleges acts of Misappropriation occurred, concurrent allegations of Theft appear as well. And Plaintiff covered this material in the original petition in much greater detail than the space allotted herein allows. If Plaintiff need edit the original petition for instances where, for example, "acquired / received" are omitted where "disclosed / conveyed" appear, please advise and Plaintiff will be happy to do so with respect.

1

**2.** State **specifically** how you were harmed as a result of the alleged theft of trade secrets.

Plaintiff's trade secret information contained very significant economic value prior to disclosure to Defendant Carol Riddick, as evinced by subsequent use and investment in multiple nearly identical new business ventures. Misappropriation and theft of Plaintiff's trade secret information and subsequent acts of use by Defendants inflicted injury upon Plaintiff including: Loss of Business Opportunity; Diminution of Value (which occurred when Defendants announced these trade secrets publicly in the form of launch of new business ventures); Lost Income (which Plaintiff would have received had they been a participant in the operations of Defendants' new business ventures); Payment of Reasonable Royalty had a negotiation for permission to use Plaintiff's trade secrets taken place; acquisition of Plaintiff's trade secret information had an arm's length negotiation taken place; other damages by Defendants using Plaintiff's trade secret information without Plaintiff's authorization; Emotional Distress; Loss of Reputation (by denying Plaintiff participation in new business ventures based on their trade secret information) and Loss of Enjoyment of Life.

Plaintiff estimates value of their trade secret information at over $15 million, which is the only credible estimate of their trade secrets to-date. This figure is equal to the amount Mr. McMahon received on disposition of the assets of his XFL in bankruptcy. The Fair Market Value was likely four to eight times that figure and will be explored by (an) expert witness(es) at trial.

**3.** Regarding your claims of theft of trade secrets, explain what events, if any, took place in the Northern District of Texas?

At the time of Plaintiff's original communications with Defendant Carol Riddick, Defendants Carol Riddick and Frank Riddick resided in University Park, Texas, claiming Homestead Exemption in Dallas County. So, the conveyance of Plaintiff's trade secrets to WWE,

Inc, Vince McMahon, Scott Jackson and Alpha Entertainment, LLC occurred while the Riddicks resided in Dallas County in the Northern District of Texas.

Defendants Vince McMahon and Alpha Entertainment, LLC (dba XFL) operated a football team at the former Ballpark in Arlington in Tarrant County in the Northern District.

Defendants Gerry Cardinale's company, Defendant Redbird Capital Partners, LLC, operates an office in Dallas, Texas in the Northern District. And while Defendants claim in their Special Appearance filing in Plaintiff's state suit that decisions for the acquisition of the XFL from Defendant Vince McMahon did not occur in their Dallas office, it should be noted that the XFL has announced that they will move to and since Plaintiff's original filing the XFL has established significant operations at the former Ballpark in Arlington in Tarrant County in the Northern District. While not included in Plaintiff's original petition, this is particularly noteworthy.

In addition, Defendant Tom Dundon resides in and his company is headquartered in Dallas, Texas, both in the Northern District. It is unclear whether Mr Dundon invested personal funds or funds from his company, Dundon Capital, in acquiring the AAF from Defendant Charlie Ebersol, thus Dundon Capital is not listed as a Defendant. But whichever the funds originated from, they claim the Northern District as their residence and headquarters, respectively, thus decisions originated here.

So, while more than one of the acts of theft of Plaintiff's trade secrets may have occurred elsewhere, Plaintiff does not possess sufficient evidence to establish the exact location of all alleged acts, only enough evidence that the original acts originated in the Northern District and spread to other actors both inside and outside the Northern District. In addition, Plaintiff, thus their trade secret information, has resided in the Northern District continuously throughout.

**4.** Identify the beginning and ending dates (month, day, and year) on which the defendant(s) allegedly committed theft of trade secrets as alleged in the complaint.

Carol and Frank Riddick had Plaintiff's trade secret information in June 2016, Mrs. Riddick having received from Plaintiff with authority to share with Mr. Riddick for purpose of discussion. Vince McMahon announced his new business venture, nearly identical to that which Plaintiff proposed, on January 25, 2018. Between these dates the following occurred: The Riddicks conveyed Plaintiff's trade secret information to Scott Jackson, probably to receive his opinion on concepts contained therein; then the Riddicks conveyed the same to Vince McMahon; Mr. McMahon conveyed to Dick Ebersol then one or both conveyed to Charlie Ebersol then one or all three conveyed to ESPN, Inc to propose the production of a television program, subsequently approved, production wrapped (concluded) in November 2016 and aired in February 2017; between February 2017 and Mr. McMahon's announcement on January 25, 2018 both Mr. McMahon's and, separately, Mr. Ebersol's new business ventures were conveying Plaintiff's trade secret information to others included named Defendants to raise investment capital, recruit executive and other personnel and for other purposes including development of new technology.

Reggie Fowler (March 2018) and Tom Dundon (February 2019) are well documented in media reports which announced their commitments to and investments in the AAF.

**5.** Identify the date(s) (month, day, and year) on which you became aware of the actions of the defendant(s).

Plaintiff became aware of the acts of Misappropriation and Theft of Trade Secrets on January 25, 2018 when Defendant Vince McMahon announced the relaunch of the XFL football league. Plaintiff expects Defendants to plead Statute of Limitations. Plaintiff pleads Equitable Estoppel in their companion state lawsuit at length in anticipation of this pleading of Statute of

Limitations and plans on pleading the same in the federal suit at such time as Defendants plead Statute of Limitations.

Plaintiff became aware of acts of Defendants pertaining to the production and broadcast of the ESPN television program at approximately the same time as Mr. McMahon's announcement of their relaunch of the XFL on January 25, 2018 and research shortly thereafter. Plaintiff became aware of Mr. McMahon's sale of WWE, Inc shares and the purpose, "For investment in the founding of a football league" (paraphrasing), during research and preparing to file the original petition, in approximately January 2018.

Plaintiff became aware of Defendant Charlie Ebersol's and others' acts of Misappropriation and Theft of Trade Secrets involving the AAF on Defendant's announcement of the launch of the AAF in March 2018.

Plaintiff became aware of RICO violations during legal research between approximately March and May 2021 and became more familiar with these violations during subsequent research and preparing to file their original petition.

**6. Briefly** provide the facts supporting your civil RICO claims.

More than two acts of Theft of Trade Secrets having been outlined and alleged in question #4 above, the provisions of the RICO statutes are activated. Under RICO, violations of 18 USC 1962 include: (a) investment in or acquisition of an interest in any enterprise; (b) acquire or maintain any interest in any enterprise; (c) participate in the conduct of any enterprise as an employee; (d) conspire to violate (a), (b) or (c). These violations are discussed at length in Plaintiff's original petition. However, briefly:

Vince McMahon invested in and acquired an interest in the XFL (a); WWE, Inc, Mr. McMahon and Frank Riddick maintained their interests in WWE, Inc (b); Mr. McMahon and Mr. Riddick participated in the conduct of WWE, Inc (c); and WWE, Inc, Mr. McMahon and Mr. Riddick conspired to violate at least (b) and (c).

Charlie Ebersol and Bill Polian acquired interests in the AAF (b); Charlie Ebersol, Dick Ebersol and Bill Polian participated in the conduct of the AAF, Charlie and Mr. Polian as executives and Dick as a member of the board of directors (c); Charlie Ebersol, Dick Ebersol and Bill Polian conspired to violate (b) and (c).

Gerry Cardinale and Redbird Capital Partners, LLC invested in Alpha Acquico, LLC dba XFL, acquiring interests directly or indirectly (a); Dwayne Johnson, Dany Garcia, Gerry Cardinale and Redbird Capital Partners, LLC acquired and maintain an interest in Alpha Acquico, LLC (b); Dwayne Johnson, Dany Garcia, Gerry Cardinale and Redbird Capital Partners, LLC participate in the conduct of the XFL, directly or indirectly (c); all four conspire to violate (b) and (c).

This is not an exhaustive list, but will have to suffice as an answer given constraints placed on Plaintiff in answering the Magistrate Judge's order.  Refer to the petition for more examples.

**7.** State **specifically** how you were harmed as a result of the alleged RICO violations.

The pattern of racketeering by Defendants and others, as established in answers to previous questions, resulted in the establishment of multiple new business ventures.  Plaintiff suffered Loss of Business Opportunity, Diminution of Value of trade secrets, Loss of Income, Loss of Reputation, Loss of Renown and Loss of Enjoyment of Life as well as other damages inflicted by the actions of Defendants.  See answer to question #2 above for additional detail.

      Bankruptcy dispositions are referred to as a "fire sale" due to the steep discount in sale price to market value. Therefore, it is likely that the XFL's Fair Market Value in April 2020 when Alpha Entertainment, LLC entered bankruptcy was significantly greater. Plaintiff intends on proving a Fair Market Value of between $75 million to $120 million based on the amount Vince McMahon received for the XFL in bankruptcy disposition.

**8.** Regarding your RICO claims, explain what events, if any, took place in the Northern District of Texas?

      Defendants Carol Riddick and Frank Riddick resided in University Park, Texas.

      Defendant Vince McMahon and Alpha Entertainment, LLC operated an XFL football team at the former Ballpark in Arlington in Tarrant County in the Northern District.

      Defendant ESPN, Inc broadcasted its '30-for-30' television program and XFL games throughout the Northern District. Defendant Charlie Ebersol produced this program, starring Defendants Vince McMahon and Dick Ebersol discussing related information.

      Defendant Tom Dundon resides in and his company is headquartered in Dallas County, so the funds he invested in the AAF as well as decisions made originated in Dallas County. Also, Darryl Johnston, the General Manager for the San Antonio football team operated by Legendary Field Exhibitions, LLC dba AAF, resided in Dallas County during the AAF's operations.

      It should be noted that although Plaintiff's original petition does not reflect the following, Alpha Acquico, LLC dba XFL has announced that it will and has in fact accomplished moving to the former Ballpark in Arlington in Tarrant County in the Northern District where it will hold significant operations and house its headquarters. Football games will be held two blocks away at AT&T Stadium.

**9.** Identify the beginning and ending dates (month, day, and year) on which the defendant(s) allegedly committed the RICO violations as alleged in the complaint.

RICO statutes state that two acts of Theft of Trade Secrets activates 18 USC 1962. The first act of theft occurred when Defendants Carol and Frank Riddick conveyed Plaintiff's trade secrets to Defendant Scott Jackson. The second occurred when they conveyed the same to Defendant Vince McMahon. Both occurred in approximately June 2016. Defendant Alpha Acquico, LLC (dba XFL) is preparing to launch football operations at present. RICO carries a 10-year modified statute of limitations during which all of Plaintiff's allegations easily fall within.

**10.** Identify the date(s) (month, day, and year) on which you became aware of the actions of the defendant(s).

Plaintiff became aware of the first (and multiple subsequent) act(s) of theft on January 25, 2018 when Mr. McMahon announced the relaunch of the XFL. This established that Mr. and Mrs. Riddick conveyed Plaintiff's trade secret information to Mr. McMahon. Plaintiff became aware of subsequent acts over time. For example, Plaintiff became aware of Mr. McMahon conveying Plaintiff's trade secret information to Charlie Ebersol in March 2018 when Mr. Ebersol announced the launch of a competing football league. Plaintiff became aware of Mr. McMahon's conveyance of Plaintiff's trade secret information to Defendant Alpha Acquico, LLC and its principals in August 2020 during the bankruptcy sale of the assets of the XFL.

**11.** Identify the companion state court case that you recently filed in state court as stated in the complaint. Provide the style, case number, and court in which the case was filed and the claims raised.

Smith v. WWE, Inc, et al. (same 20 Defendants as federal case; same numbering of Defendants)

DC-22-08146

101st District Court

Judge Staci Williams

Plaintiff alleges violations of state law including:  Misappropriation of Trade Secrets; Conspiracy to Commit Misappropriation of Trade Secrets; Conspiracy to commit Breach of Confidence; Inducement of Breach of Confidence; and Conspiracy to commit Inducement of Breach of Confidence.  Theft of Trade Secrets being a matter of criminal law and there being no state RICO statutes allowing civil action following multiple acts of theft, there are no such charges.

In the Application to Proceed in District Court Without Prepaying Fees or Costs (motion to proceed in forma pauperis), you state that you receive gross monthly earnings of $1,774. Thus, your total annual household income ($21,288) exceeds the applicable poverty level ($13,590).

**12.** Explain why you claim you lack sufficient resources to pay the applicable fees of $402.

As the court knows, *In Forma Pauperis* is not simply about a filing fee.  This designation affords other benefits to Plaintiff.  The District Clerk absorbs the expense of serving process on Defendants, which, with 20 Defendants is a substantial burden.  In addition, Plaintiff is also pursuing their rights in a companion suit in Texas court which also entails substantial costs beyond a simple filing fee.

It is likely that there will be many rounds of discovery questions and other motions that would also make such an undertaking prohibitively expensive for Plaintiff.  Being awarded *IFP* designation makes pursuing this matter much more reasonable for a Plaintiff already fighting an uphill battle against a VIP list of celebrities, C-suite executives, billionaires and Fortune 500 corporations.  For example, Plaintiff already has a stack of motions to answer and schedule hearings for in the state suit.  If the federal court approves Plaintiff to proceed following its 1915 review and Defendants commence being served, an equal if not greater number of motions will begin almost immediately.

**13.** Provide any other information that will help explain why you cannot pay the applicable fees of $402.

Again, the court is aware that these are not the only fees or expenses associated with filing or continuing to pursue such an action. Dismissing this action in an era when inflation is at near all-time highs would be a work of injustice and inequity.

Further, Plaintiff was the victim of false arrest, false imprisonment, malicious prosecution and violation of civil rights when on August 6, 2021 they were arrested for refusal to comply with the mask mandate enforced by Dallas Area Rapid Transit based on the CDC mask order which was subsequently thrown out in April 2022. Plaintiff must secure counsel to pursue their rights in that matter as well, which, quite frankly, is a distraction from this matter which Plaintiff considers much more pressing and important. But an abuse took place and must be answered, which acts as a further drain on Plaintiff's already limited resources.

Respectfully submitted,

By: */s/ David Adrian Smith*
David Adrian Smith
*Pro Se*
3917 Clubway Ln
Farmers Branch, TX 75244
davidadriansmith@hotmail.com
Cell # 214-235-9215

## CERTIFICATE OF SERVICE

On Thursday, August 25, 2022 I filed a copy of this Answers to Magistrate Judge's Questionnaire with the clerk of court for the U.S. District Court, Northern District of Texas. Service has not been performed on any other parties or individuals as the court is still performing its 1915 review of Pro Se Plaintiff's petition.

                                                               */s/ David Adrian Smith*
                                                             David Adrian Smith, *Pro Se*

**STATE OF TEXAS**

**COUNTY OF     DALLAS    **

## VERIFICATION

I understand that a false statement or answer to any interrogatory in this cause of action will subject me to penalties for perjury. I declare (or certify, verify or state) under penalty of perjury that the foregoing answers are true and correct. 28 U.S.C. ' 1746.

SIGNED on this    25th    day of    September   , 2022.

                                                              */s/ David Adrian Smith*
                                                              David Adrian Smith, *Pro Se*
                                                              (submitted electronically)