IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID ADRIAN SMITH, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:22-cv-1580-B-BN |
| WWE, INC., ET AL., | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff David Adrian Smith, alleging misappropriation and theft of trade secrets, filed a *pro se* complaint under the Racketeer Influenced and Corrupt Organizations (RICO) Act, against numerous individual and entities. *See* Dkt. No. 3. Smith amended his claims through verified responses to a screening questionnaire. *See* Dkt. Nos. 9, 10. His lawsuit was transferred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle. *See* Dkt. No. 11. The Court granted Smith's motion for leave to proceed *in forma pauperis* (IFP). *See* Dkt. Nos. 4, 12. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should dismiss the complaint as amended for Smith's failure to allege a claim on which relief may be granted.

**Legal Standards**

A district court is required to screen a civil action filed IFP and may summarily

dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). So the pleading requirements as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to the Court's screening of a complaint filed IFP.

Considering these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels;

threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

In sum, to survive dismissal, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

And "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## Analysis

Smith appears to allege that the defendants improperly used his trade secrets while relaunching the XFL in 2018. And, through a complaint with more than 400 paragraphs, he accuses a wide cast of characters of misappropriating trade secrets and operating a criminal enterprise predicated on the theft of trade secrets. But the complaint lacks factual content to suggest that Smith is entitled to relief.

To start, Smith alleges that in May 2016 he "disclosed confidential trade secret

information to" Defendant Carol Riddick "via email including market analysis, opportunity analysis, strategic analysis and other business information regarding a concept for a minor league or developmental league spring football league." Dkt. No. 3, ¶ 26.

Smith "stated in their first email to [Ms. Riddick] 'Please feel free to share with Mr. Riddick but ya'll keep it under your hats until we have the chance to discuss how to proceed or that it has no merit.'" *Id.*

Smith alleges that, in making this contact, the intent was to discuss with the Riddicks "a prior failed venture by [World Wrestling Entertainment, Inc. (WWE)]" to discover what WWE "learned from the failed venture and what, if they were to attempt such a venture again, they may do differently." *Id.*

And Smith alleges that, through "a series of emails" with Ms. Riddick, she "asked several rounds of questions and [Smith] provided responses with answers and further analysis of the opportunity including further trade secret information. After several rounds of such back and forth, and no response from either [Mr. or Ms. Riddick] with feedback on what [WWE] learned from their previous failed venture, [Smith] ceased communicating with [Ms. Riddick]." *Id.*

Accepting as true that Smith and Ms. Riddick exchanged emails in May 2016, this is the only paragraph of the complaint in which Smith plays an active role. Starting with the next paragraph, Smith alleges that, from the relaunch of the XFL in January 2018 and over the course of several years, the defendants either disclosed, conveyed, acquired, or received his "trade secret information," presumably the

information that was disclosed to Ms. Riddick in May 2016. *Id.*, ¶¶ 27-36.

Insofar as Smith invokes 18 U.S.C. §§ 1832 and 1836, as well as the RICO statute, the allegations appear aimed to show both misappropriation of a trade secret – and thus a cause of action under the Defend Trade Secrets Act of 2016 (the DTSA), 18 U.S.C. § 1836 *et seq.* – and a civil RICO claim, where the claimed racketeering activity is theft of a trade secret, *see, e.g.*, *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 694-95 (E.D. Tex. Oct. 2, 2020) (observing that "[t]he RICO statute now defines racketeering activity as, among other things, 'any act indictable' under 18 U.S.C. §§ 1831, 1832, which criminalizes theft of trade secrets," while "the DTSA established a private right of action for trade secret misappropriation in federal court," then rejecting the argument that "the civil cause of action in section 1836 – which contains different language than that of the criminal statute – is incorporated into [18 U.S.C. §] 1961 as a RICO predicate" (citations omitted)).

To state a plausible claim of misappropriation under the DTSA, Smith must at least allege facts from which the Court may infer "that '(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff.'" *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018) (quoting, in turn, *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009))).

"A trade secret is information which derives independent economic value from

being not generally known or readily ascertainable through proper means." *Id.* (footnote omitted); *see* 18 U.S.C. § 1839(3) (defining the term to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" <u>if</u> "the owner thereof has taken reasonable measures to keep such information secret" <u>and if</u> "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information").

And a trade secret's existence "is a question of fact." *CAE Integrated*, 44 F.4th at 262 (footnote omitted).

But, to allege the existence of a trade secret, a plaintiff "is not required to identify the specific trade secret." *Philips N. Am. LLC v. Image Tech. Consulting*, No. 3:22-cv-147-B, 2022 WL 2972226, at *8 (N.D. Tex. July 26, 2022) (citation omitted); *see also Vest Safety Med. Servs., LLC v. Arbor Envtl.*, Civ. A. No. H-20-0812, 2020 WL 4003642, at *4 (S.D. Tex. July 15, 2020) ("Federal courts do not require highly specific pleadings for trade secret claims because relevant facts are often unavailable before discovery, and the plaintiff must be permitted to plead the claim without destroying the information's secrecy." (citations omitted)).

Even so, a court must apply "the facial plausibility standard of *Twombly* and *Iqbal*" to the factual content intended to show that a trade secret existed. *DBG Grp. Invs., LLC v. Puradigm, LLC*, No. 3:21-cv-678-S, 2022 WL 313435, at *3 (N.D. Tex. Feb. 2, 2022); *see, e.g., id.* (concluding that the existence of trade secret was plausible

where the complaint alleged "'the process underlying DBG's ActivePure technology, specifically the mixing instructions, formulation and application of the quad-metallic coating to the honeycomb matrix inside of [Plaintiff's] air purification products'" and "detai[ed] the specific policies and measures employed by Plaintiff to protect the trade secret's confidentiality"); *Phillips N. Am.*, 2022 WL 2972226, at *8 ("Philips does provide ample allegations to identify the trade secrets at issue in this case. Philips describes them as 'restricted software, including software to modify medical devices,' and 'restricted confidential trade secret CSIP materials and software[,] ... not generally known in the industry.'" (citation omitted)); *Vest Safety Med. Servs*, 2020 WL 4003642, at *4 ("The court is persuaded that the pleaded facts, taken as true, suffice to establish both that Vest took steps to keep the MEQ Algorithm confidential and that it has economic value dependent on that confidentiality. The allegations are specific and speak to several of the factors Texas courts use to assess a trade secret: the MEQ Algorithm was not known outside of Vest, required significant time and resources to develop, formed the foundation of a successful business, and was kept confidential by digital security and contractual arrangements." (cleaned up)).

In contrast to these examples, Smith's conclusory allegations as to the existence of a trade secret – that he "disclosed confidential trade secret information to" Ms. Riddick "via email including market analysis, opportunity analysis, strategic analysis and other business information regarding a concept for a minor league or developmental league spring football league," Dkt. No. 3, ¶ 26 – lack facial plausibility.

And, had Smith alleged enough factual detail to allow the Court to infer that the "financial, business, scientific, technical, economic, or engineering information" he disclosed in 2016 "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information," 18 U.S.C. § 1839(3), Smith still fails to allege that he took reasonable steps to safeguard this information.

Disclosing alleged trade secrets to apparent strangers through an apparently unsolicited email, asking that "ya'll keep it under your hats until we have the chance to discuss how to proceed or that it has no merit," Dkt. No. 3, ¶ 26, is not within the universe of reasonable safeguards outlined in other cases from this district, *see, e.g.*, *RRK Foods Inc. v. Sree Nidhi Corp.*, No. 3:21-cv-2943-G, 2022 WL 3636676, at *10 (N.D. Tex. Aug. 23, 2022) ("RRK asserts that it 'plead that its trade secrets were "unknown to its competitors" which would have been impossible had plaintiff not taken reasonable safeguards to protect their privacy.' In support of its position that it took reasonable steps to safeguard its information, RRK cites *Sortiumusa LLC v. Hunger*, No. 3:11-CV-1656-M, 2013 WL 11730655 (N.D. Tex. Mar. 31, 2013) (Lynn, J.). However, in *Sortiumusa*, the plaintiff alleged that the defendant had 'signed a confidentiality agreement, and that it maintained its customer list on a single, password-protected computer, that it has implemented a policy prohibiting employees from printing or copying the customer list on removable media such as USB drives, and that its list is generally unknown to competitors.' *Id*. at *12. By

contrast to the plaintiff in *Sortimusa,* RRK has failed to allege that it took reasonable measures to keep information secret." (citations omitted)).

Turning to Smith's RICO claim, such a claim "necessitates 1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Gabriel v. Outlaw*, No. 22-10314, 2023 WL 2645549, at *2 (5th Cir. Mar. 27, 2023) (per curiam) (quoting *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995)).

> "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). A plaintiff must plead the elements of the criminal offenses that constitute the predicate acts, *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989), and must show that the alleged racketeering activity was both the "but for" and proximate cause of the injury to his business or property, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

*Id.*

The consideration of the RICO claim starts (and ends) with the elements of the criminal offense of theft of a trade secret in violation of 18 U.S.C. § 1832. "The statutory definition of 'trade secret' as it is used in § 1832(a) is set forth in a different statute: 18 U.S.C. § 1839," *United States v. Xue*, 597 F. Supp. 3d 759, 772 (E.D. Pa. 2022), the same statute that defines "trade secret" under the DTSA. So, for the reasons set out above, Smith's RICO claim predicated on Section 1832 also fails because Smith has not alleged the theft of a "trade secret."

The Court should therefore dismiss the complaint.

### Leave to Amend

The time to file objections to this recommendation (further explained below)

allows Smith an opportunity to explain how the deficiencies identified above can be cured and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

But, if Smith fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

## Recommendation

The Court should dismiss this action with prejudice unless, within the time to file objections to these findings, conclusions, and recommendation, Plaintiff David Adrian Smith shows a basis to further amend the complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 14, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE